**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0163-20

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

MOHAMED BAYOUMI,

      Defendant-Appellant.

_____

> Submitted May 18, 2021 – Decided June 1, 2021
>
> Before Judges Fisher and Moynihan.
>
> On appeal from the Superior Court of New Jersey, Middlesex County, Law Division, Indictment No. 18-10-1418.
>
> Mazraani & Liguori, LLP, attorneys for appellant (Jeffrey S. Farmer, of counsel and on the briefs).
>
> Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Joie D. Piderit, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

In this appeal, we consider defendant's argument that the trial judge erred in allowing police testimony about what they saw in footage from a surveillance camera of the robbery, for which defendant was convicted, that was no longer available because of technological issues in its downloading, as well as his argument that the evidence offered was not the "best evidence" of what the missing video depicted. We find no merit in defendant's arguments and affirm.

Mahmoud Elsayed worked at the Caravan Motor gas station in Avenel where he attended the gas pumps and sold various items from a small booth. On August 30, 2018, he was approached by a "shorter," "thin" man sporting a "light beard" wearing an "extra[-]long" white, dotted t-shirt and white pants. The man asked to purchase a pack of cigarettes, but when Elsayed went to retrieve the cigarettes, the man followed him into the booth, pressed what appeared to be a gun wrapped in black electrical tape into Elsayed's body, and demanded money. Elsayed resisted, and the man fled.

While on patrol nearby, a Woodbridge police officer heard dispatch provide a description of the suspect and his direction of travel. Soon after, the officer observed a man fitting the description on a residential street roughly two blocks from the robbery site. He stopped the man, later identified as defendant. He was wearing a white, spotted t-shirt with dark pants layered over a pair of

A-0163-20

white pants. Defendant was "sweating profusely" and was "winded," leading the officer to deduce that defendant "was definitely moving at a fast pace at some point." Defendant was not in possession of a weapon, but a detective who soon arrived searched the immediate area and found what appeared to be a handgun wrapped in electrical tape in a bush at the end of a driveway. The recovered weapon was later determined to be fake.[1]

After defendant was arrested, police conducted a show-up identification within thirty minutes of the robbery; Elsayed identified defendant as the man who attempted to rob him. When asked how certain he was, Elsayed said, "100 percent positive."

The robbery was captured by Caravan's security cameras. Officers viewed the video at the gas station but for unknown reasons, when it was downloaded, no video was captured. Prior to trial, the prosecutor advised the judge she did not intend to use what was obtained from the attempt to download what the surveillance cameras captured and did not intend on calling the police officers who watched the footage at the gas station. Defense counsel, however, insisted this evidence should be presented so the jury would learn "there [had been] a

---

[1] The record does not reflect what type of "imitation handgun" was recovered, merely that both parties agree it was a "fake."

video" but they "[would]n't [be able to] see it." The trial judge informed defense counsel that if she chose to "open up that Pandora's box" he would not "preclude the State then from asking a witness what he had seen on that video before it was lost." Because of defense counsel's insistence, the State called to testify the two officers who viewed the video at the gas pumps: Officer Thompson and Detective Goins.

The judge conducted an N.J.R.E. 104(a) hearing during which Officer Thompson was asked what he observed on the video. He said he could not identify defendant on the video but he did see "a male fitting the description" of defendant that Elsayed had provided: "thin, light-skinned male, white shirt, white pants . . . near the gas station vestibule." He also stated that Detective Goins was present when he viewed the video. The court instructed Officer Thompson that he was not to testify to the jury "that [he] saw [defendant]" in the video; rather, he was "to testify to the fact that [he] saw a person who matched the description of [defendant]."

During his testimony, Officer Thompson told the jury he received consistent descriptions of the culprit from the victim as well as other witnesses who saw the culprit run from the gas station. He also testified that the man on the video matched the witnesses' descriptions and that the video depicted a man

4

"push[ing] an object into [Elsayed's] abdomen." As instructed, Officer Thompson did not tell the jury he believed the man on the video was defendant.

Detective Goins also testified at trial about what he saw on the video. He described the depicted individual as "wearing white pants, white shirt . . . appear[ing] to be consistent [with] . . . the statement that the victim gave," and that the individual pressed what appeared to be a gun into Elsayed's stomach before leaving the premises. Detective Goins explained that he was personally unable to retrieve the video from the gas station and had another officer obtain it for him later; later, when preparing for trial, he became aware the disc contained no video, only audio. When the audio was played for the jury, Detective Goins testified he could not discern any specific sounds from it.

Elsayed testified and identified defendant as the man who attempted to rob him. Another individual testified to witnessing a "shorter" man wearing a "baggy white shirt" and long, white shorts jogging away from the gas pumps; he also made a positive in-court identification of defendant as that same man. Another individual also testified to seeing a short, "dark skinned" man wearing white reaching for a weapon kept in his belt while standing close to Elsayed.

After a three-day jury trial, defendant was convicted of first-degree robbery, N.J.S.A. 2C:15-1(a)(2), and fourth-degree possession of a weapon for

5

an unlawful purpose, N.J.S.A. 2C:39-4(e).  At sentencing, the judge merged the convictions and imposed an eleven-year prison term, subject to an eighty-five percent period of parole ineligibility.

Defendant appeals, arguing: (1) the "officers' testimony about the contents of the lost video violated New Jersey's Best Evidence Rule[, N.J.R.E. 1002]"; and (2) the "officers' testimony that the suspect on the surveillance video matched the description was wholly improper and requires reversal."

We first conclude that any argument about the admission of the existing audio evidence and the police officers' testimony about what they saw on the video before it was lost is barred by the invited error doctrine, which precludes a party from attacking on appeal the very outcome sought in the trial court.  State v. Jenkins, 178 N.J. 347, 358 (2004) (holding that "a defendant cannot beseech and request the trial court to take a certain course of action, and upon adoption by the court, take his chance on the outcome of the trial, and if unfavorable, then condemn the very procedure he sought . . . claiming it to be error and prejudicial"); see also State v. Kemp, 195 N.J. 136, 155 (2008).

Despite the prosecution's decision not to offer any evidence about the surveillance video, defense counsel urged the admission of the fact that surveillance cameras captured the event and the admission of whatever was

contained on the disc on which the surveillance footage was downloaded, arguing that refraining to do so would prejudice the defense. Defendant took this position knowing it would open the door to the prosecution's offering the officers' testimony about what they saw before the footage was lost. The judge acceded to defendant's request and, in fairness to the State, allowed the prosecution to provide witnesses to describe what they had seen on the video. In short, defendant "insisted that the jury be made aware of" the surveillance video and its unavailability due to downloading problems, thereby allowing the prosecution to offer evidence now complained about. Only now does defendant present a different, inconsistent argument. The invited error doctrine precludes defendant's argument on appeal that he was prejudiced by the admission of the evidence.[2]

We also reject defendant's argument that Officer Thompson's and Detective Goins's testimony violated N.J.R.E. 701, which allows for the admission of lay witness opinion testimony when "based on the perception of

---

[2] Defendant's invocation of the best evidence rule is equally unavailing. The prosecution was entitled to the admission of "other evidence of the contents" of the video on a showing that "[a]ll originals [we]re lost or . . . destroyed, unless the proponent lost or destroyed them in bad faith." N.J.R.E. 1004. The evidence revealed that the video portion was lost due to unexplained circumstances and not through the prosecution's bad faith.

A-0163-20

the witness" and when of "assist[ance] [to] the jury in performing its function." State v. McLean, 205 N.J. 438, 456 (2011). Recently, the Supreme Court considered the application of this rule to a detective's testimony about a surveillance video, in which he explicitly referenced defendant as the person depicted. The Court held that although the detective should not have "refer[red] to an individual depicted in the surveillance video as 'the defendant' in his narration," the error was "harmless given the fleeting nature of the comment." State v. Singh, 245 N.J. 1, 17-18 (2021). Moreover, the detective's testimony in Singh was not impermissible because it was limited to the "contours of permissible 'fact testimony' by police officers," which included perceptions obtained through the use of the officer's own senses without conveying what he "'believed,' 'thought' or 'suspected.'" Id. at 15 (quoting McLean, 205 N.J. at 460). When asked to describe what he observed on the video, Officer Thompson carefully followed the trial court's instructions and referred to the individual he saw on the video as "a man fitting the description" given by the eyewitnesses; he did not provide any personal explanation about his thoughts or convey his belief that the man on the tape was defendant. Similarly, Detective Goins described what he saw on the video, referred to the depicted culprit only as "the

individual," and gave his own visual description of the individual before adding that the individual's appearance seemed "consistent" with the victim's statement.

What occurred here is not similar to what occurred in State v. Lazo, where the Court held that a police officer who did not personally witness the crime, did not personally know the defendant, and had an opinion "stemm[ing] entirely from the victim's description" should not have testified about whether defendant's photo resembled the composite sketch created by the victim. 209 N.J. 9, 22-24 (2012). Both Officer Thompson and Detective Goins remarked that the individual on the video they saw matched the description given to them by the victim because both officers had personally seen the video footage, which captured the robbery, and could describe the depicted individual's appearance on their own. Neither officer, however, gave an opinion about the identity of the individual in the video; in fact, when asked if he could identify defendant in the video, Officer Thompson explicitly said he could not. Although it would have been preferable for the officers to merely describe the individual depicted in the video without attempting to link the depicted individual's appearance to the description given by the witnesses – allowing instead the jury to do that – we find no harmful error in the scope of the testimony permitted.

A-0163-20

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0163-20